UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MAYER CHAIM BRIKMAN (RABBI),
RIVKAH BRIKMAN, JOSEPH B.
WOLHENDLER,

     Plaintiffs,

                 MEMORANDUM AND ORDER

    -against-             19-cv-5143 (RPK) (CLP)

TWITTER, INC., YEHOSHUA S. HECHT,

     Defendants.
-------------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

  In this lawsuit, *pro se* plaintiffs seek to hold defendant Twitter liable for defamation on the ground that Twitter allowed an anonymous user to post tweets that plaintiffs consider defamatory and refused to remove those tweets when asked. Twitter has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230, and the First Amendment preclude plaintiffs' defamation claims. For the reasons set forth below, I find that the CDA preempts plaintiffs' claims against Twitter. Accordingly, Twitter's motion is granted, and plaintiffs' claims against Twitter are dismissed. Because granting leave to amend would be futile, the dismissal is with prejudice.

BACKGROUND

  Plaintiff Mayer C. Brikman is Rabbi of Kneses Israel of Seagate, a Brooklyn synagogue. *See* Compl. ¶ 1 (Dkt. #1). He and his wife Rivkah Brikman, together with Kneses board member Joseph B. Wolhendler, filed this lawsuit seeking damages and injunctive relief for posts shared on Twitter that plaintiffs allege are defamatory. They have named as defendants Twitter and an

individual who allegedly retweeted the posts in question. Plaintiffs invoke the Court's diversity jurisdiction under 28 U.S.C. § 1332. *Id.* at 5-6.

Plaintiffs claim that "unidentified disgruntled individual members" of Kneses have created a Twitter account with the handle "@KnesesG" to wage a campaign of harassment against them. *Id.* ¶¶ 4-5. They allege that the account is "impersonating [their] synagogue" and posting tweets about plaintiffs which they consider defamatory. *See id.* ¶¶ 6-7, 10-12. When plaintiffs reported the offending tweets to Twitter, it declined to remove them, finding that they were not in violation of its rules. *See id.* ¶ 7; Ex. F.

Plaintiffs do not allege that Twitter created the purportedly defamatory content shared by the @KnesesG account. Rather, they claim that through "actions and/or inactions," Twitter has "knowingly and with malice . . . allowed and helped non-defendant owners of Twitter handle @KnesesG, to abuse, harras [*sic*], bully, intimidate, [and] defame" plaintiffs. *Id.* ¶¶ 10-12. Plaintiffs aver that by allowing @KnesesG to use its platform in this way, Twitter has committed "Libel Per Se" under the laws of the State of New York. *Ibid.* As relevant here, they seek an award of damages and injunctive relief that would prohibit Twitter from "publishing any statements constituting defamation/libel . . . in relation to plaintiffs." *Id.* at 10.

Twitter (but not the individual defendant) has filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the claims against it are preempted by the CDA and barred by the First Amendment. *See* Mem. in Supp. of Mot. to Dismiss by Twitter, Inc. (Dkt. #23).

STANDARD OF REVIEW

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous*

2

*Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). To avoid dismissal, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations omitted). The complaint, in other words, must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. While the plausibility standard "is not akin to a 'probability requirement,'" it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

Plaintiffs' defamation claims against Twitter are foreclosed by the CDA. They are therefore dismissed on that ground, without reaching Twitter's constitutional argument for dismissal. While plaintiffs seek leave to amend the Complaint to add additional claims against the company, the proposed amendment would be futile because the new claims would also be subject to dismissal. Accordingly, plaintiffs' claims against Twitter are dismissed with prejudice.

A. <u>The CDA Bars Plaintiff's Defamation Claims</u>

Plaintiffs' defamation claims are preempted under the CDA. Section 230(c)(1) of that statute provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." The statute expressly preempts any claims that are inconsistent with that provision. *See* 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."). Accordingly, a defendant is entitled to immunity under Section 230(c)(1) of the CDA where "(1) the defendant is a provider or user of an

3

interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would treat the defendant as the publisher or speaker of that information." *La Liberte v. Reid*, 966 F.3d 79, 89 (2d Cir. 2020) (quoting *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016)). The Second Circuit has instructed that the text of Section 230(c)(1) "should be construed broadly in favor of immunity." *Force v. Facebook, Inc.*, 934 F.3d 53, 64 (2d Cir. 2019). Twitter meets each of these requirements for preemption of plaintiffs' claims.

1. Twitter Is an Interactive Computer Service

First, Twitter qualifies as an interactive computer service. The CDA defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). Twitter is an online platform that allows multiple users to access and share the content hosted on its servers. As such, it is an interactive computer service under the CDA. *See Dehen v. Does 1-100*, No. 17-cv-198 (LAB), 2018 WL 4502336, at *3 (S.D. Cal. Sept. 19, 2018); *Mezey v. Twitter, Inc.*, No. 18-cv-21069 (KMM), 2018 WL 5306769, at *1 (S.D. Fla. July 19, 2018); *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1121 (N.D. Cal. 2016); *Am. Freedom Defense Initiative v. Lynch*, 217 F. Supp. 3d 100, 105 (D.D.C. 2016); *see also Mosha v. Yandex Inc.*, No. 18-cv-5444 (ER), 2019 WL 5595037, at *7 (S.D.N.Y. Oct. 30, 2019) (noting that online "aggregators of third-party content" are covered by the CDA) (citing *LeadClick*, 838 F.3d at 174); *Ricci v. Teamsters Union Local 456*, No. 13-cv-7729 (NSR), 2014 WL 11353151, at *2 (S.D.N.Y. Apr. 28, 2014) (finding that "any 'information service, system, or access software provider' that is the passive host of third party content on its server or websites is an interactive computer service"), *aff'd*, 781 F.3d 25 (2d Cir. 2015). Accordingly, "if [Twitter] is being sued in its capacity as a provider of an 'interactive

computer service,' it is immune from defamation liability under the Communications Decency Act." *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 27 (2d Cir. 2015) (internal citation omitted).

2. Plaintiffs' Claims Are Based on Information Provided by Another Information Content Provider

Second, plaintiffs' claims against Twitter are "based on information provided by another information content provider." *La Liberte*, 966 F.3d at 89. The CDA defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the *creation or development* of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3) (emphasis added). Here, plaintiffs' claims are based on information created or developed by another information content provider—@KnesesG. Plaintiffs do not allege that Twitter played any role in the "creation or development" of the challenged tweets.

3. Plaintiffs' Claims Would Treat Twitter as the Publisher or Speaker of the Information Provided by Another Information Content Provider

Finally, plaintiffs' claims would hold Twitter liable as the publisher or speaker of the information provided by @KnesesG. Plaintiffs allege that Twitter has "allowed and helped" @KnesesG to defame plaintiffs by hosting its tweets on its platform, Compl. ¶¶ 10-12, or by refusing to remove those tweets when plaintiffs reported them, *see id.* ¶ 7; Ex. F. Either theory would amount to holding Twitter liable as the "publisher or speaker" of "information provided by another information content provider." *See* 47 U.S.C. § 230(c)(1). Making information public and distributing it to interested parties are quintessential acts of publishing. *See Facebook*, 934 F.3d at 65-68. Plaintiffs' theory of liability would "eviscerate Section 230(c)(1)" because it would hold Twitter liable "simply [for] organizing and displaying content exclusively provided by third

5

parties." *Id.* at 66. Similarly, holding Twitter liable for failing to remove the tweets plaintiffs find objectionable would also hold Twitter liable based on its role as a publisher of those tweets because "[d]eciding whether or not to remove content . . . falls squarely within [the] exercise of a publisher's traditional role and is therefore subject to the CDA's broad immunity." *Murawski v. Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007); *see Ricci*, 781 F.3d at 28 (finding allegations that defendant "refused to remove" allegedly defamatory content could not withstand immunity under the CDA).

Plaintiff's suggestion that Twitter aided and abetted defamation "[m]erely [by] arranging and displaying others' content" on its platform fails to overcome Twitter's immunity under the CDA because such activity "is not enough to hold [Twitter] responsible as the 'developer' or 'creator' of that content." *Facebook*, 934 F.3d at 70. Instead, to impose liability on Twitter as a developer or creator of third-party content—rather than as a publisher of it—Twitter must have "directly and materially contributed to what made the content itself unlawful." *Id.* at 68 (citation and internal quotation marks omitted); *see, e.g.*, *id.* at 69-71 (finding that Facebook could not be held liable for posts published by Hamas because it neither edited nor suggested edits to those posts); *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1269-70 (9th Cir. 2016) (finding that Yelp was not liable for defamation because it did "absolutely nothing to enhance the defamatory sting of the message beyond the words offered by the user") (citation and internal quotation marks omitted); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 257 (4th Cir. 2009) (rejecting plaintiffs' claims because they "[did] not show, or even intimate" that the defendant "contributed to the allegedly fraudulent nature of the comments at issue") (citation and internal quotation marks omitted); *see also Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014) ("[A] website does not create or develop content when it merely provides a neutral means by which third parties

6

can post information of their own independent choosing online."). Plaintiffs have not alleged that Twitter contributed to the defamatory content of the tweets at issue and thus have pleaded no basis upon which it can be held liable as the creator or developer of those tweets. *See Goddard v. Google, Inc.*, No. 08-cv-2738 (JF), 2008 WL 5245490, at *7 (N.D. Cal. Dec. 17, 2008) (rejecting plaintiff's aiding and abetting claims as "simply inconsistent with § 230" because plaintiff had made "no allegations . . . that Google 'developed' the offending ads in any respect"); c*f. LeadClick*, 838 F.3d at 176 (finding defendant was not entitled to immunity under the CDA because it "participated in the development of the deceptive content posted on fake news pages").

Accordingly, plaintiffs' defamation claims against Twitter also satisfy the final requirement for CDA preemption: the claims seek to hold Twitter, an interactive computer service, liable as the publisher of information provided by another information content provider, @KnesesG.

B. <u>Granting Leave to Amend Would Be Futile</u>

While plaintiffs have requested leave to amend the Complaint, *see* Pls.' Mem. of L. in Opp'n to Twitter's Mot. to Dismiss ("Opp'n Br.") (Dkt. #24), plaintiffs' request makes clear that granting leave would be futile. The Federal Rules of Civil Procedure provide that leave to amend should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). Moreover, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). At the same time, leave to amend may be denied "when amendment would be futile." *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006). Accordingly, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to

deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Amendment is unlikely to be productive if the claims that a plaintiff proposes to add "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). That circumstance is present here, because plaintiffs seek leave to amend for the purpose of developing additional theories of liability that would not survive a motion to dismiss: "[f]alse advertising and deceptive practices . . . under New York's General Business Law Sections 349 and 350," "breach [of] contract under the theory of promissory estoppel," and "violation of the Federal Stalking laws under 18 U.S.C. [§] 2261A." Opp'n Br. 2-4 (internal quotation marks omitted).

Plaintiffs' proposal to amend their complaint to set out a claim of deceptive business practices and false advertising would be futile. *See* Opp'n Br. 2-3. To state a claim for deceptive business practices and false advertising in violation of New York General Business Law ("N.Y. G.B.L.") Section 349 and 350, a plaintiff must allege "(1) 'the challenged act or practice was consumer oriented'; (2) the act or practice 'was misleading in a material way'; and (3) 'the plaintiff suffered injury as a result of the deceptive act.'" *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 360 (E.D.N.Y. 2014) (quoting *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000)). Plaintiffs fail to allege that Twitter engaged in any act or practice that was "misleading in a material way" because the very rules they rely on in asserting their claims—the "Twitter Rules," *see* Compl. Ex. E—make clear that Twitter is not obligated to remove content that violates its own policies, *see id.* at 3 ("[W]e *may* ask someone to remove the violating content . . . If an account is engaging primarily in abusive behavior, we *may* permanently suspend the account upon initial review.") (emphasis added). Because Twitter never represented to plaintiffs that it would remove any content violating its rules, plaintiffs cannot allege that Twitter engaged in any act or

8

practice of misrepresentation by failing to remove the @KnesesG tweets they reported—even if those tweets violated Twitter's rules. Their claims under N.Y. G.B.L. Sections 349 and 350 would accordingly fail as a matter of law. *Cf. Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 595-96 (S.D.N.Y. 2019) (rejecting plaintiff's fraud claims because defendant "[did] not warrant that it *will* remove illicit content . . . [but] merely represent[ed] that it *may* do so"), *aff'd*, 765 F. App'x 586 (2d Cir. 2019).

Plaintiffs' proposed promissory estoppel claim would similarly fail as a matter of law. To state a claim of promissory estoppel, a plaintiff must allege "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." *Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167, 172 (2d Cir. 2005) (quoting *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 79 (2d Cir. 1996)). Plaintiffs argue that Twitter undertook to "uphold the Twitter [R]ules" and "breached [its] contract under the theory of promissory estoppel" by declining to remove the @KnesesG tweets plaintiffs reported. *See* Opp'n Br. 4. But again, the Twitter Rules on which plaintiffs rely contain no promise to remove any content upon request. Plaintiffs cannot plead a promissory estoppel claim based on a promise Twitter never made to them.

Finally, plaintiffs' proposed claim that Twitter violated "the Federal Stalking laws under 18 U.S.C. [§] 2261A," *id.* at 3, would also be subject to dismissal. Plaintiffs' theory is that "the person(s) behind the Twitter account in question (@KnesesG) was in violation of the Federal Stalking law," and Twitter is liable as a result. *Ibid.* But Section 2261A is a criminal statute that provides no private right of action. *See Cain v. Christine Valmy Int'l Sch. of Esthetics, Skin Care, and Makeup*, 216 F. Supp. 3d 328, 335 (S.D.N.Y. 2016) (collecting cases). And even if plaintiffs could enforce Section 2261A through a civil suit, under the CDA Twitter cannot be held civilly

9

liable as the publisher or speaker of the @KnesesG communications at issue, because those Tweets are information provided by another information content provider as to which Twitter is merely acting as publisher. *See Mosha*, 2019 WL 5595037, at *8.

A liberal reading of the Complaint, together with plaintiffs' Opposition Brief, does not "give[ ] any indication that a valid claim may be stated." *Nielsen*, 746 F.3d at 62 (quoting *Chavis*, 618 F.3d at 170). The causes of action that plaintiffs have proposed all either run directly into the immunity afforded to Twitter by the CDA or require reading into the Twitter Rules promises and representations that Twitter did not make. Accordingly, the problems with plaintiffs' claims are "substantive"—that is, they cannot be cured by "better pleading." *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y. 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). I therefore find that amendment would be futile and deny leave to amend the Complaint.

## CONCLUSION

Because plaintiffs' defamation claims against Twitter are precluded by the CDA, Twitter's motion to dismiss is granted. The Complaint is dismissed with prejudice because a liberal reading of plaintiffs' filings does not give any indication that a valid claim could be stated in an amended complaint.

SO ORDERED.

      /s/ Rachel Kovner
    RACHEL P. KOVNER
    United States District Judge

Dated:     Brooklyn, New York
            September 17, 2020